# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MICHAEL HAMADE, et al.,            )
                                    )
    Plaintiffs,             )
                                    )
v.                                  ) CIVIL ACTION 13-0534-WS-N
                                    )
NETWORK FUNDING, LP, et al.,       )
                                    )
    Defendants.             )

## ORDER

This matter is before the Court on the defendants' motions to dismiss. (Docs. 6, 9). The parties have filed briefs in support of their respective positions, (Docs. 7, 9, 11, 14, 16), and the motions are ripe for resolution. After careful consideration, the Court concludes that both motions are due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1, Exhibit A at 6-10), the plaintiffs entered into a mortgage agreement with defendant Network Funding, LP ("Network"). They were coerced into signing the mortgage and related documents, which contained terms (including term, interest rate and responsibility for expenses) different than those they had discussed with the defendants. The next day, the plaintiffs decided to cancel the contract. They sent Network a notice of right to cancel, along with thirteen $10,000 bills, which Network received two days later. Defendant Generation Mortgage Company ("Generation") was involved in the transaction, since the mortgage reflects that it is to be mailed to Generation after being recorded. The defendants have refused to cancel the mortgage or return the $130,000.

The complaint asserts three causes of action against both defendants: (1) fraud; (2) breach of contract; and (3) conversion. (Doc. 1, Exhibit A at 8-10). The defendants seek the dismissal of all counts.

## DISCUSSION

**I. Fraud.**

Count One alleges that the defendants' agents made misrepresentations "concerning the interest rate on the above referenced mortgage, the term of the mortgage, and payment of costs." (Doc. 1, Exhibit A at 8). As a result, "the interest rate is higher than was represented" and "the term of the mortgage is less than what might be [the plaintiffs'] lifetime." (*Id*. at 9).

As the plaintiffs concede, (Doc. 11 at 1), they were required to plead this claim with the particularity required by Rule 9(b). "We have held that pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010). The defendants argue that Count One falls far short of this standard, and the Court agrees.

While it can be extrapolated from the complaint that someone, at some point, indicated that the interest rate would be less than it turned out to be, that the length of the mortgage would be longer than it turned out to be, and that the plaintiffs would pay less in expenses than they eventually did, the complaint does not assert that any particular individual associated with any particular defendant made any particular statement to any particular plaintiff in any particular message transmitted via any particular form of communication on any particular date at any particular place. Whatever play in the joints may exist for excusing some deficiencies in this regard, the plaintiffs' failure is complete and cannot by any stretch of the imagination be said to satisfy even the most forgiving construction of Rule 9(b). The plaintiffs' ipse dixit to the contrary, (Doc. 11 at 1), which is all they offer, cannot alter this fact.

**II. Breach of Contract.**

Count Two alleges that "[t]he conduct of the Defendants by refusing to cancel the mortgage constitutes a breach of contract." (Doc. 1, Exhibit A at 9). The defendants assume the contract at issue is limited to the note and mortgage and point out that these documents contain no provision permitting cancellation. (Doc. 7 at 10; Doc. 9 at 5-6; Doc. 1, Exhibit A at 12-22; Doc. 7, Exhibit A). The plaintiffs respond that the right to cancel is contained in a "notice of right to cancel" which they executed at closing. (Doc. 11 at 2; Doc. 1, Exhibit A at 23-24). Generation in its reply ignores the plaintiffs' response. (Doc. 14 at 3-4). Network complains that the plaintiffs fail to cite any authority for the proposition that such a notice could be part of the parties' contract, (Doc. 16 at 4), but on motion to dismiss the burden is on the defendants to show that the notice is not part of the contract, not on the plaintiffs to show that it is.

## III. Conversion.

> An action alleging conversion of cash lies only where the money involved is "earmarked" or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.

*Gray v. Liberty National Life Insurance Co.*, 623 So. 2d 1156, 1160 (Ala. 1993). The defendants argue that the complaint alleges neither that the $10,000 bills sent by the plaintiffs were specific money capable of identification or that the defendants had an obligation to return those exact bills and not merely the sum of $130,000. (Doc. 7 at 15; Doc. 9 at 7-8).

The plaintiffs respond that $10,000 bills are not in circulation in the United States and that these bills are thus identifiable. (Doc. 11 at 2). The complaint itself, however, contains no allegation reflecting the rarity and, perhaps, consequent identifiability of the bills. And the plaintiffs offer no explanation or excuse for the complaint's failure to allege that the defendants were obligated to return the same $10,000 bills to them. Without such an allegation, the complaint does not set forth a plausible claim for

conversion, as required by Rule 8(a)(2) as construed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Elliott v. Leatherstocking Corp.*, 2011 WL 1431618 at *7 (N.D.N.Y. 2011).

Generation asserts the additional argument that the complaint fails to allege that it is or ever was in possession of the thirteen $10,000 bills. (Doc. 9 at 8). "To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Vandenberg v. Aramark Educational Services, Inc.*, 81 So. 3d 326, 343 (Ala. 2011) (internal quotes omitted). Count Three affirmatively alleges that "[t]he conduct by the Defendant, Network Funding in not returning the $130,000.00 as described above to the Plaintiffs, constitutes conversion." (Doc. 1, Exhibit A at 10). The complaint thus by its very terms limits the tortious misconduct to that of Network, not Generation. Without an allegation that Generation is responsible for Network's conduct (and there is none), there can be no viable claim of conversion against Generation.

## CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are **granted** with respect to Counts One and Three and **denied** with respect to Count Two. Dismissal is with leave to amend.[1]

DONE and ORDERED this 10th day of January, 2014.

                                            s/ WILLIAM H. STEELE
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[1] The plaintiffs have sought leave to amend, (Doc. 11 at 4), and the defendants have registered no objection. *See also Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (old 5th Cir. 1981) (noting that "dismissal for failure to comply with Rule 9(b) is almost always with leave to amend").